**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

LIJUAN WANG, PhD, an individual,

     Plaintiff.

v.

ALLIANCE FOR SUSTAINABLE ENERGY, LLC, A Delaware limited liability corporation,

     Defendant.

_____

**COMPLAINT AND REQUEST FOR JURY TRIAL**
_____

     Dr. Lijuan Wang, through her counsel, Thomas Mitchiner, Mitchiner Law LLC, and Steven L. Murray, Murray Law LLC, asserts these claims against the Defendant, Alliance for Sustainable Energy, LLC.

     This is an employment discrimination case arising from the Defendant's intentional discriminatory treatment of Dr. Wang, based on sex, race, ancestry, ethnicity, color, and national origin and for retaliating against Dr. Wang for engaging in protected activity in violation of Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e et. seq. [Title VII] and the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 [Section 1981].

**I.  PARTIES**

1.     Dr. Lijuan Wang [Wang] is a Chinese female and resident of Colorado.

2. Alliance for Sustainable Energy, LLC [Alliance] is a Delaware limited liability corporation operating in Colorado with offices in Golden, Colorado.

3. Alliance operates the National Renewable Energy Laboratory [NREL] in Golden, CO.

4. Wang resides in Colorado, and she worked for Defendant Alliance in Golden, Colorado, within the judicial district of this Court.

5. Alliance conducts business within the judicial district of this Court.

6. Alliance employs over 15 persons.

## II.   JURISDICTION AND VENUE

7. Jurisdiction is proper under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, 2000e-5 and 2000e-5(f)(1)(3), *as amended,* by the Civil Rights Act of 1991, 42 U.S.C. § 1981a (a) (1), (b) (1)-(4), (c), (d) (1) (2) [all statutes are collectively referenced as "Title VII" and "Section 1981"].

8. Wang was an employee of Alliance as defined by Title VII and Alliance was an employer as defined by Title VII.

9. Wang and Alliance are persons under Section 1981.

10. This Court also has jurisdiction under 28 U.S.C. § 1331.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b) (c).

## III.   ADMINISTRATIVE PROCEDURES

12. Before filing this action, Wang timely, properly, and lawfully exhausted all required administrative procedures and remedies.

13.     Wang filed a timely charge of unlawful sex, national origin, race, and equal pay discrimination and retaliation with the United States Equal Employment Opportunity Commission [EEOC] and the Colorado Civil Rights Division [CCRD]. [EEOC Charge No. 541-2020-01708].

14.     On September 29, 2020, the EEOC mailed a Notice of Right to Sue letter to Wang.

15.     This action is timely filed because it is filed within ninety days of Wang's receipt of the Notice of Right to sue letter issued by the EEOC.

## IV.     NATURE OF THE CASE

16.     This action seeks legal and equitable relief for Defendant's intentional and discrimination and retaliation against Wang, acts in violation of Title VII and Section 1981.

## V.   GENERAL ALLEGATIONS

17.     Wang received her Ph.D. in Mechanical Engineering from the University of West Virginia.

18.     Alliance hired Wang in July 2011 to work as an Engineer III.

19.     Wang worked in Alliance's Center for Integrated Mobility Services.

20.     The Center for Integrated Mobility Services uses NREL's pioneering research, engineering, and analysis to accelerate the development of energy-efficient mobility technologies and strategies for passenger and freight transportation.

21.     Wang worked in the Mobility, Behavior and Advanced Powertrains group, under Group Manager Jeffery Gonder [Gonder]

22.     Wang reported to Gonder during her entire employment with Alliance.

23.     From her hire date through 2016, Wang received positive performance reviews from Gonder and Alliance, and Gonder frequently praised her work.

24.     During this period, Wang earned three raises/bonuses based on her productivity.

25.     In 2016, Wang approached Gonder and asked him if she could receive a promotion to Engineer IV.

26.     Gonder told Wang it was impossible at the time because an Engineer IV costs his department more money than an Engineer III.

27.     Gonder did not tell Wang she could not be promoted because of her performance or because she had any scientific or technical issues with her work.

28.     Gonder had no issues with Wang's performance or work until 2017.

29.     In 2017, Wang took three and a half months of paid time off, and FMLA leave to take care of her dying father in China.

30.     After Wang returned to work from her leave and trip to China, Gonder, for the first time, spoke to Wang about her performance and provided her with negative feedback about her work performance.

31.     Gonder's alleged main concern was that it required multiple meetings and iterations of a project for Wang to understand the requests and deliver results.

32.     Later in 2017, Wang worked on a group project called the Systems and Modeling for Accelerated Research in Transportation Mobility Consortium [SMART Multi-Modal project].

33.     The SMART Multi-Modal project ran from 2017-2018.

34.     Kevin Walkowicz [Walkowicz], the Group Manager of the Advanced Vehicles and Fueling Infrastructure Group, ran the project as the Principal Investigator [PI]. Wang worked on the project with Walkowicz and three other team members.

35.     Because the SMART Multi-Modal project was new, no one knew how to complete the project.

36.     In Wang's 2017 Performance Review, Gonder attributed the negative issues the SMART Multi-Modal project to Wang, even though it was a group project.

37.     Wang did not cause problems or negative issues on the SMART Multi-Modal project.

38.     In Wang's response to her performance review, she informed Alliance that because it was a group project, Gonder's comments attributing all the issues to Wang were inaccurate, but Alliance did not investigate further.

39.     On August 3, 2018, Wang met with Gonder for her 2018 Mid-Year Review.

40.     Gonder rated Wang poorly in the 2018 Mid-Year Review.

41.     Gonder based Wang's 2018 Mid-Year Review, in part, on his observations and comments from Wang's co-workers.

42.     The 2018 Mid-Year Review did not accurately describe Wang's performance.

43.     In Wang's 2018 Mid-Year Review, Gonder attacked Wang's communication skills, including her ability to articulate and understand items being discussed.

44.     Prior to Wang's 2018 Mid-Year Review, Gonder and Wang had not worked closely together for nearly three years.

45.    Further, Wang's primary coworker for the past year had no issues with her performance or her communications skills.

46.    Before Wang's leave in 2017, no person at Alliance had commented about her ability to speak and communicate in the English language.

47.    In December 2018, Wang met with Gonder for her 2018 Annual Performance Review. Gonder rated her performance as "needs improvement."

48.    In the 2018 Annual Performance Review, Gonder stated that Wang struggled with "descriptive communication, clear language, and written and verbal communication clarity."

49.    Gonder's comments were taken directly from Wang's 2017 performance review.

50.    Alliance and Gonder offered no training to Wang to improve her alleged communication and English language deficiencies.

51.    On December 17, 2018, Alliance put Wang on a Performance Improvement Plan [PIP].

52.    This was the first time Alliance had placed Wang on a PIP during her seven years of employment with Alliance.

53.    The PIP concerned Wang's alleged inability to communicate well, her failure to work on impactful, valuable projects, errors made in her work, and her relatively low output.

54.     After Alliance placed Wang on the PIP, which was to last for 60-days, Alliance did not address the PIP with her again until one year later, in her December 2019 Performance Review.

55.     Upon information and belief, when Alliance places an employee not of Wang's protected class on a PIP, it addresses the PIP with the employee regularly and often.

56.     On December 18, 2018, a person left a business card on Wang's car in the Alliance parking lot, stating "learn how to park asshole, or I will key your shit."

57.     On December 26, 2018, Wang's car, parked in Alliance's parking lot, was egged.

58.     Wang reported both incidents to Alliance and the Golden Police Department.

59.     On January 7, 2019, Wang filed a charge of discrimination with the Equal Employment Opportunity Commission about the discrimination and retaliation she was suffering at Alliance.

60.     From the summer of 2019 until November 2019, Wang attempted to schedule meetings with Gonder to discuss the PIP. Gonder and Wang only had one meeting about her PIP.

61.     Gonder did not agree to schedule the meetings requested by Wang.

62.     Upon information and belief, Gonder meets with employees not of Wang's protected class to discuss PIP's upon the request of the employee.

63.     In response to Wang's poor performance reviews, Wang hired and paid for, on her own and with her own money, a business coach to assist her in her presentation skills and provide her general business advice.

64.     On February 2, 2019, Gonder excluded Wang from a meeting entitled "NREL SMART Mobility Strategic Planning Discussion."

65.     The meeting was an important meeting regarding applying for funding for the SMART Mobility project.

66.     Gonder invited all of Wang's team members, including interns, to the meeting, although Wang worked extensively on SMART Mobility in 2017 and 2018.

67.     On April 8, 2019, Wang gave a presentation to Gonder about her progress on the PIP.

68.     Gonder did not provide Wang with any feedback in response to her presentation.

69.     In May of 2019, the left taillight of Wang's car was damaged while she was parked at Alliance.

70.     When Wang took her car to a professional for repair, she was informed that the damage was done by someone using a hammer or another hard object, indicating that the car was intentionally damaged.

71.     Wang reported the incident to Alliance and the Golden Police Department.

72.     In the summer of 2019, Wang worked on another project with Walkowicz.

73.     At the start of the project, Walkowicz told Wang he wanted her to classify vehicles as his group already had them classified on the website, and to have her add the fuel consumption for each plot.

74.     Wang created a model that trained and tested the models with existing data.

75.     Wang did more than Walkowicz had requested and she developed a Fuel Consumption predictive model [FC].

76.     Around July 15, 2019, Walkowicz asked Wang to pause her work to permit the team to catch up with her work on the project.

77.     On July 24, 2019, Wang's right-front tire on her car was slashed while she was parked at Alliance.

78.     Wang reported the incident to Alliance and the Golden Police Department.

79.     On August 19, 2019, Wang gave a presentation to Walkowicz's group about the FC

80.     The meeting was attended by Chris Gearhart, the Director of the Center for Integrated Mobility Sciences, Gonder, and Walkowicz.

81.     In August, Wang talked with Alliances, Technology Transfer Office [TTO]. The TTO assists Alliance employees with securing copyrights for their work.

82.     In order to submit a copyright assertion, Wang's FC predictive model had to have an Alliance record number/name. [Copyright Model]

83.     On August 28, 2019, Wang talked with Jean Schulte, a Licensing Executive at TTO, and submitted the Copyright Model to receive a copyright on it.

84.     On September 10, 2019, Wang's car was keyed while parked at Alliance.

85.     Wang reported this matter to Alliance's Human Resources and Security offices and the City of Lakewood police department.

86.     On October 7, 2019, Gonder emailed Wang regarding the Copyright Model, stating that Wang and her co-workers needed to craft a clear and concise paragraph for the copyright request.

87.     On October 16, 2019, Wang responded to Gordon's email, and provided him with a few paragraphs she had drafted about the concept, methodology, and applications of the work she had done for them for the copyright assertion.

88.     Gonder did not reply to Wang's email dated October 16, 2019.

89.     On October 24, 2019, Wang scheduled a meeting with Gonder to discuss her work.

90.     Gonder told Wang she underperformed compared to the peers, even though she completed a few difficult projects with high quality.

91.     In the meeting, Gonder asked Wang to resend the copyright summary she had sent earlier. Wang complied with this request, but Gonder never responded to her.

92.     Further in the meeting, Gonder demeaned Wang and her Copyright Model, telling her he saw no real-world applications for it and that it was similar to a model created by a coworker of hers.

93.     On November 18, 2019, Wang scheduled a meeting with Gyda Torbet [Torbet], a human resources employee, and Gearhart. Wang set up the meeting because she believed that Gonder had demonstrated a pattern over the past years of not fairly

evaluating her work and performance because of his discriminatory bias against her, and she wanted to show Torbet and Gearhart how much work she had performed.

94.     On November 19, 2019, Gonder scheduled everyone's performance review but did not schedule Wang's performance review.

95.     At the end of each year Alliance employees submit Technology Commercialization Fund [TCF] requests, to the DOE for the next fiscal year to receive funding on work the employee wants to perform.

96.     On December 5, 2019, Wang submitted a TCF proposal as co-Principal Investigator with her coworker Jacob Holden.

97.     On December 18, 2019, Wang and Gonder meet for her Performance Review. Gonder gave Wang another "Need Improvement" rating.

98.     In the review, Gonder finally gave Wang feedback on her completion of the PIP and her presentation in April.

99.     On January 13, 2020, the DOE authorized Wang's request for a copyright on the Copyright Model.

100.    On January 22, 2020, Alliance demoted Wang from Engineer III to Engineer II.

101.    The demotion placed Wang in a position with less prestige and responsibility.

102.    Wang, an Asian female with a Ph.D. with seven years' experience at Alliance, was demoted to Engineer II from Engineer III, despite the fact that a white male

employee with a master's degree and four years' experience at NREL worked as an Engineer IV, a higher ranked position.

103.    In 2020, Wang worked on receiving funding for a project entitled "Fiscal Year 2020 Advanced Vehicle Technologies Funding Opportunity Announcement" [2020 Funding Proposal].

104.    The DOE requires National Laboratories' like NREL, to work with universities and industries to submit proposals for projects that need funding through a Funding Opportunity Announcement [FOA]. NREL employees cannot lead these proposals.

105.    Wang meet with colleagues from Utah State University and Purdue University to discuss the 2020 Funding Proposal.

106.    In April 2020, Wang and Utah State University and Purdue University submitted the 2020 Funding Proposal.

107.    In May 2020, the 2020 Funding Proposal team received positive feedback from the reviewers of the proposal and who encouraged the 2020 Funding Proposal team to write a full proposal.

108.    In a meeting in June 2020, Wang reported to Gonder and Torbet that it appeared that she would receive funding for the 2020 Funding Proposal.

109.    On July 8, 2020, Alliance terminated Wang from employment.

110.    On July 16, 2020, Wang's 2020 Funding Proposal was funded for $1.75 million of which $320,000.00 was allocated to Alliance. Wang's work was instrumental in Alliance obtaining this funding award.

111.   Alliance acted intentionally in discriminating and retaliating against Wang and violating 42 U.S.C. Section 1981 and Title VII.

112.   Alliance's discriminatory and retaliatory actions have caused Wang to suffer economic losses, including loss of wages and salary, benefits, monetary losses, retirement contributions, and other monetary losses.

113.   Alliance's discriminatory and retaliatory actions have caused Wang to suffer emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, future pecuniary losses, and other non-pecuniary losses.

114.   In taking the discriminatory and retaliatory actions against Wang, Alliance acted willfully, with malice or reckless indifference to the rights of Wang, entitling her to an award of punitive damages.

## VI.  CLAIMS FOR RELIEF

### FIRST CLAIM

**[Race/Ancestry/Ethnicity/Color/ National Origin Discrimination - 42 U.S.C. § 1981]**

115.   Wang incorporates and restates all allegations asserted as though incorporated.

116.   This claim is for discrimination on the bases of race, ancestry, ethnicity, color, and/or national origin under 42 U.S.C. § 1981 [Section 1981].

117.   Wang, as a Chinese female with Asian ancestry and ethnicity, is in a protected class of race, ancestry, ethnicity, color, and/or national origin under Section 1981.

118.   Wang satisfactorily performed all her duties.

119.   Alliance discriminated against Wang by terminating her employment because of – but for her protected class of race, ancestry, ethnicity, color, and/or national origin under Section 1981.

120.   Wang was qualified she held when discharged, and she performed her duties satisfactorily throughout her employment with Alliance.

121.   Alliance's termination of Wang's employment was unwarranted and discriminatory.

122.   Also, Alliance discriminated against Wang because of – but for her Section 1981 protected class status of race, ancestry, ethnicity, color, and/or national origin: (a) with her respect to  compensation, terms, conditions, or privileges of employment; and/or (b) by limiting, segregating, or classifying Wang in a way, which deprived, or tended to deprive Wang of employment opportunities, or otherwise adversely affect her status as an employee because of - but for her above protected class under Section 1981.

123.   By the conduct described above, Alliance intentionally deprived Wang of the same rights and working conditions, as the White employees of Alliance, in the performance, enjoyment, continuation, and all the benefits and privileges of her employment relationship with Alliance, in violation of Section 1981.

124.   Alliance engaged in direct, continual, increasing, and intentional ~~racial~~ discrimination in taking adverse unlawful employment practices against Wang because of – but for her protected class of race, ancestry, ethnicity, color, and/or national origin under Section 1981.

## SECOND CLAIM

**[Retaliation - 42 U.S.C. § 1981]**

125.   Wang incorporates and restates all allegations asserted as though incorporated.

126.   This claim is for unlawful retaliation under Section 1981 for engaging in protected activity by complaining of discrimination under Section 1981

127.   Wang participated in protected Section 1981 activities by complaining of discrimination based on race or national origin or ancestry under Section 1981.

128.   Wang's protected activities included but were not limited to

a.   Filing a charge of discrimination with the Equal Employment Opportunity Commission on January 7, 2019.

b.   Making complaints to Alliance's Human Resources office about the vandalism to her vehicle.

c.   Making complaints to Alliance's Human Resources office about the discriminatory treatment she suffered because of Gonder.

d.   Making complaints to Gonder about the discriminatory way he treated her, including but not limited to his repeated criticisms of her communication skills.

129.   Alliance knew of Wang's protected Section 1981 activities.

130.   Alliance, with knowledge of Wang's protected activities, engaged in a purposeful campaign and pattern of materially adverse actions against her, which increased in severity and resulted in her unwarranted discharge from employment.

131.   Wang was qualified for the position she held when discharged, and she performed her duties satisfactorily throughout her employment with Alliance.

132.   Alliance's termination of Wang's employment was unwarranted and retaliatory.

133.   A causal connection exists between Wang's protected activities and Alliance's unlawful materially adverse employment actions against her.

134.   There is sufficient temporal proximity between Wang's protected activity and her termination from employment.

135.   Wang's protected activities covered the period of January 7, 2020 – July 2020.

136.   Alliance terminated Wang less than one month after her last protected activity on July 8, 2020.

137.   Alliance engaged in unlawful, direct, intentional, adverse, retaliatory and discriminatory employment actions prohibited by Section 1981 against Wang because of – but for protected Section 1981 activities as described in this Complaint.

138.   This intentional unlawful retaliation was created and perpetuated, and/or tolerated by Alliance's officials, managers, and employees.

### THIRD CLAIM

**[Race/Ancestry/Ethnicity/Color/ National Origin Discrimination]**
**(Title VII of the Civil Rights Act of 1964 - 42 U.S.C. § 2000e *et. al*.)**

139.   Wang incorporates and restates all allegations asserted as though incorporated.

140.   Title VII forbids a covered employer from discriminating against or discharging any individual about the terms, conditions, or privileges of employment because of the person's race, ancestry, ethnicity, color, or national origin.

141.   Wang is a Chinese female with Asian ancestry and ethnicity.

142.   Wang is in the protected class of race, ancestry, ethnicity, color, and/or national origin under Title VII.

143.   Alliance discriminated against Wang, because of her Title VII protected status of race, ancestry, ethnicity, color, and/or national origin, by discharging her from employment.

144.   Wang was qualified for the position she held when discharged, and she performed her duties satisfactorily throughout her employment with Alliance.

145.   Alliance's termination of Wang's employment was unwarranted and discriminatory.

146.   Also, Alliance discriminated against Wang because of her Title VII protected status of race, ancestry, ethnicity, color, and/or national origin: (a) regarding her compensation, terms, conditions, or privileges of employment; and/or (b) by limiting, segregating, or classifying Wang which deprived, or deprived, Wang of employment opportunities, or otherwise hurt her status as an employee, because of her above Title VII protected status.

147.   Alliance's treatment of Wang constitutes intentional, unlawful discrimination because of her Title VII protected class status of race, ancestry, ethnicity, color, and/or

national origin in violation of 42 U.S.C. Sections 2000e- 2(a)(1)(2), and 42 U.S.C. Section 1981a (a)(1), (b)(1)(2)(3)(D), and (d)(1)(2).

### FOURTH CLAIM

**[Sex Discrimination]**
**(Title VII of the Civil Rights Act of 1964 - 42 U.S.C. § 2000e *et. al.*)**

148.   Wang incorporates and restates all allegations asserted as though incorporated.

149.   Wang is a female.

150.   Wang is in the Title VII protected class of sex.

151.   Title VII forbids a covered employer from discriminating against or discharging any individual about the terms, conditions, or privileges of employment because of the person's sex.

152.   Alliance discriminated against Wang, because of her sex, by discharging her from employment.

153.   Wang was qualified for the position she held when discharged, and she performed her duties satisfactorily throughout her employment with Alliance.

154.   Alliance's termination of Wang's employment was unwarranted and discriminatory.

155.   Also, Alliance discriminated against Wang because of her sex: (a) with respect to her compensation, terms, conditions, or privileges of employment; and/or (b) by limiting, segregating, or classifying Wang in a way, which deprived, or tended to deprive, Wang of employment opportunities, or otherwise adversely affect her status as an employee, because of her sex.

156.   Alliance's treatment of Wang constitutes intentional, unlawful discrimination because of her Title VII protected class of sex in violation of 42 U.S.C. Sections 2000e-2(a)(1)(2), and 42 U.S.C. Section 1981a (a)(1), (b)(1)(2)(3)(D), and (d)(1)(2).

## **FIFTH CLAIM**

### **[Retaliation - Title VII - 42 U.S.C. § 2000e *et. al.*]**

157.   Wang incorporates and restates all allegations asserted as though incorporated herein.

158.   The claim is for unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e-3.

159.   Under Title VII, Alliance was specifically prohibited from unlawful retaliation and discrimination against Wang because she engaged in EEO activities protected by Title VII. 42 U.S.C. Section 2000e-3(a).

160.   Alliance engaged in retaliation against Wang, by taking materially adverse actions against her, because of – but for her participation in protected activities under Title VII.

161.   Wang participated in protected Title VII activities by complaining of discrimination based on race, national origin, ethnicity, ancestry, color, and/or sex.

162.   Wang's protected activities included but were not limited to

a.   Filing a charge of discrimination with the Equal Employment Opportunity Commission on January 7, 2019.

b.   Making complaints to Alliance's Human Resources office about the vandalism to her vehicle.

c.    Making complaints to Alliance's Human Resources office about the discriminatory treatment she suffered because of Gondor.

d.    Making complaints to Gonder about the discriminatory way he treated her, including but not limited to his repeated criticisms of her communication skills.

163.   Alliance knew of Wang's protected Title VII activities.

164.   Alliance, with knowledge of Wang's protected activities, engaged in a purposeful campaign and pattern of materially adverse actions against her, which increased in severity and resulted in her unwarranted discharge from employment.

165.   Wang was qualified for the position she held when discharged, and she performed her duties satisfactorily throughout her employment with Alliance.

166.   Alliance's termination of Wang's employment was unwarranted and retaliatory.

167.   A causal connection exists between Wang's protected activities and the Alliance's unlawful materially adverse employment actions against her.

168.   There is a sufficient temporal proximity between Wang's protected activity and her termination from employment.

169.   Wang's protected activities covered the period of January 7, 2020 – July 2020.

170.   Alliance terminated Wang less than one month after her last protected activity on July 8, 2020.

171.    Alliance engaged in unlawful, direct, intentional, adverse, retaliatory and discriminatory employment actions prohibited by Title VII against Wang because of – but for her protected Title VII activities as described.

172.    This intentional unlawful retaliation was created and perpetuated, and/or tolerated by Alliance's officials, managers, and employees.

173.    Alliance's treatment of Wang constitutes unlawful and intentional retaliation and discrimination in violation of 42 U.S.C. § 2000e-3(a) and violating 42 U.S.C. § 1981a (a)(1), (5)(2)(3)(D), (d)(1)(2).

## SIXTH CLAIM

**[Sex Discrimination – Pay-Wages-Salary]**
**(Title VII of the Civil Rights Act of 1964 - 42 U.S.C. § 2000e *et. al*.)**

174.    Wang incorporates and restates all allegations asserted as though incorporated.

175.    Wang is a female.

176.    Wang is in the Title VII protected class of sex.

177.    Title VII forbids a covered employer from discriminating against or discharging any individual about the terms, conditions, or privileges of employment because of the person's sex.

178.    Alliance discriminated against Wang, because of her sex, by paying male employee's a higher salary or grater wages than Alliance paid Wang.

179.    Wang occupied a job or position similar and/or substantially similar to the jobs or positions held by the higher paid males.

180.     Alliance intentionally discriminated against Wang because of her sex regarding her compensation, terms, conditions, or privileges of employment.

181.     Alliance's treatment of Wang constitutes intentional, unlawful discrimination because of her Title VII protected class of sex in violation of 42 U.S.C. Sections 2000e-2(a)(1)(2), and 42 U.S.C. Section 1981a (a)(1), (b)(1)(2)(3)(D), and (d)(1)(2).

## VII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Dr. Lijuan Wang, respectfully requests this Court to enter judgment in Dr. Lijuan Wang's favor and against Alliance on all claims and to award these remedies:

(a)     To enter a judgment for Wang and against Alliance, finding   Alliance's actions constitute unlawful intentional discrimination on the bases of race, ancestry, ethnicity, color, and/or national origin in violation of 42 U.S.C. § 1981 and Title VII.

(b)     To enter a judgment for Wang and against Alliance, finding Alliance's actions constitute unlawful, intentional retaliation in violation of 42 U.S.C. § 1981 and Title VII.

(c)     To enter a judgment for Wang and against Alliance, finding Alliance's actions constitute unlawful intentional discrimination because of sex in violation of Title VII.

(d)     To enter a judgment for Wang and against Alliance, finding Alliance's actions constitute a willful violation of 42 U.S.C. § 1981 and Title VII.

(e)     To award Wang the remedies of damages for back pay, restored benefits, accommodations, actual monetary damages, loss of wages, salary, retirement contributions, all loss of income, and all loss of monetary damages to which she is entitled.

(f)     To award Wang compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, future pecuniary losses, and other non-pecuniary losses, and all loss of compensatory damages to which she is entitled.

(g)     To award Wang punitive damages.

(h)     To award Wang attorney fees and costs.

(i)     To award Wang pre-judgment and post-judgment interest at the appropriate rate provided by law.

(j)     To direct Alliance to take such affirmative relief steps as are necessary to ensure that the effects of Alliance's unlawful employment practices are eliminated and do not continue to affect Wang's employment opportunities.

(k)     Order Defendant to reinstate Wang to employment or in lieu of reinstatement, award Wang front pay.

(l)     To award Wang all other legal and equitable relief, to which Wang is entitled under any law, this Court deems just, equitable, and proper.

## **JURY TRIAL REQUEST**

Under Fed.R.Civ.P. 38 (a)(b)(c), Title VII, 42 U.S.C. § 1981a(c)(1), and all laws providing for a right to trial by jury, Wang seeks a jury trial of all claims and issues.

Dated: December 23, 2020.


Respectfully submitted,


 Mitchiner Law, LLC

/s/Thomas H. Mitchiner
Mitchiner Law, LLC
1888 N. Sherman St. Suite 200
Denver, CO 80203
Telephone: 720.538.0371
Email: tmitchiner@mitchinerlawllc.com


Murray Law, LLC

/s/ Steven L. Murray
Murray Law, LLC
1888 Sherman Street, Suite 200
Denver, CO 80203
Telephone: (303) 396-9952
E-mail: steven@smurraylaw.com

*Attorneys for Plaintiff Dr. Lijuan Wang*

Plaintiff's Address:

7061 Salvia Street, Arvada, CO 80007